UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED FOOD AND COMMERCIAL WORKERS UNION, LOCAL 791, AFL-CIO, <br><br>　　　　Plaintiff, <br><br>v. <br><br>SHAW'S SUPERMARKETS, INC., <br><br>　　　　Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) )　　CIVIL ACTION NO. 03-12472-RCL |

ANSWER AND COUNTERCLAIM
OF DEFENDANT SHAW'S SUPERMARKETS, INC.

　　As its first defense to plaintiff United Food and Commercial Workers Union, Local 791, AFL-CIO's ("Local 791") complaint, defendant Shaw's Supermarkets, Inc. ("Shaw's) responds as follows to the correspondingly numbered paragraphs in plaintiff's complaint.

　　1.　　This paragraph states a conclusion of law as to which no response is required.

　　2.　　Shaw's admits that Local 791 is a labor organization representing a bargaining unit of employees employed by Shaw's located within this judicial district. The remaining allegations contained in this paragraph state a conclusion of law as to which no response is required.

　　3.　　Shaw's admits that it is a corporation engaged in the retail grocery business with its headquarters in East Bridgewater, Massachusetts and a distribution facility in Methuen, Massachusetts. The remaining allegations contained in this paragraph state a conclusion of law as to which no response is required.

　　4.　　Admitted.

　　5.　　Admitted.

6.	Shaw's denies that a hearing was held before Arbitrator Alleyne on July 12, 2002. Shaw's admits the remaining allegations contained in this paragraph.

7.	Denied.

8.	Shaw's admits that a copy of the Arbitrator's Award is attached as Exhibit A to plaintiff's complaint. Further answering, Shaw's states that the Award speaks for itself.

9.	Shaw's admits that a copy of Union counsel's September 4, 2003, letter is attached to plaintiff's complaint as Exhibit B. Further answering, Shaw's states that the letter speaks for itself. Shaw's denies the remaining allegations contained in this paragraph.

10.	Shaw's admits that a copy of Union counsel's October 15, 2003, letter is attached to plaintiff's complaint as Exhibit C. Further answering, Shaw's states that the letter speaks for itself. Shaw's denies the remaining allegations contained in this paragraph.

11.	Shaw's admits that a copy of its counsel's October 20, 2003, letter is attached to plaintiff's complaint as Exhibit D. Further answering, Shaw's states that the letter speaks for itself. Shaw's denies the remaining allegations contained in this paragraph.

12.	Shaw's admits that a copy of Union counsel's October 28, 2003, letter is attached to plaintiff's complaint as Exhibit E. Further answering, Shaw's states that the letter speaks for itself. Shaw's denies the remaining allegations contained in this paragraph.

13.	Shaw's admits that a copy of its counsel's November 5, 2003, letter is attached to plaintiff's complaint as Exhibit F. Further answering, Shaw's states that the letter speaks for itself. Shaw's denies the remaining allegations contained in this paragraph.

14.	Denied.

15. Shaw's denies that its planned modification of premiums due from employees violates the Arbitrator's Award. Shaw's admits the remaining allegations contained in this paragraph.

16. Denied.

17. Shaw's admits that a copy of Union counsel's November 18, 2003, letter is attached to plaintiff's complaint as Exhibit G. Further answering, Shaw's states that the letter speaks for itself.

18. Denied.

19. Denied.

20. Shaw's denies that Local 791 is entitled to the relief requested.

21. Shaw's denies that Local 791 is entitled to the relief requested.

22. Shaw's denies that Local 791 is entitled to the relief requested.

23. Shaw's denies that Local 791 is entitled to the relief requested.

## Second Defense

This Court lacks subject matter jurisdiction over Local 791's claims.

## Third Defense

Local 791's claims are barred, in whole or in part, by its failure to state a claim for which relief may be granted.

## Fourth Defense

Local 791's claims are barred, in whole or in part, by its failure to exhaust the grievance and arbitration procedure in the parties' CBA.

## COUNTERCLAIM

1. Article 37, Section 4 of the parties' collective bargaining agreement ("CBA") provides:

> **Full time employees may participate in the Company's Supplemental Short Term Disability (STD) Program, or may purchase a separate non-Company Supplemental STD program to increase the maximum hourly benefit to 2/3's of hourly rate ($1000 weekly maximum), fully paid by the employee**.

2. In approximately December, 1999, Shaw's began calculating supplemental short term disability benefits owed to employees covered by the CBA at the Methuen distribution facility by multiplying the employee's hourly rate, as reflected in Shaw's payroll system, by 40, based on an assumed 40-hour work week; and calculating 2/3 of that number then subtracting $330 up to a maximum combined weekly benefit of $1,000.

3. Prior to that date, for an approximate six month period, Shaw's had calculated supplemental short term disability benefits by using the employee's actual weekly earnings in the eight weeks preceding his or her date of disability to determine the employee's average weekly wage.

4. Employees who elected to participate in the supplemental short term disability program paid premiums to obtain the supplemental benefit through an insurance policy.

5. The policy premiums were determined based on the expectation that benefits would be calculated using an employee's hourly wage times forty hours per week.

6. Local 791 grieved the change in methods of calculating supplemental short term disability benefits.

7. After a hearing, Arbitrator Reginald Alleyne ordered that "employees who suffered losses as a result of the violation shall be made whole for any differences between the

Supplemental Short Term Disability benefit calculated on the basis of regular hourly rate and those calculated on the basis of gross hourly pay, including overtime pay."

8. Between December, 1999 and the present, over 100 Methuen employees received supplemental short term disability benefits under the terms of the CBA.

9. Shaw's re-calculated the supplemental short term disability benefits due to these employees based on the Arbitrator's methodology (i.e., based on the employee's actual wages (including overtime wages) during the eight weeks preceding the date of disability.

10. With this recalculation, certain employees had received more supplemental short term disability benefits than they were entitled to.

11. Aetna also recalculated the premiums due from the employees to obtain supplemental short term disability benefits using the Arbitrator's methodology of benefits calculation.

12. Aetna's recalculation resulted in additional premium payments being owed by all Methuen employees who received supplemental short term disability benefits pursuant to the terms of the CBA.

13. Offsetting for additional amounts due to certain employees based on the inclusion of overtime wages in the benefits calculations, Shaw's is owed in excess of $50,000 in premium payments and overpayment of supplemental short term disability benefits.

### Count I - Breach of the Collective Bargaining Agreement

14. Shaw's incorporates by reference the allegations in paragraph 1 through 13 above.

15. Local 791's members' failure to fully pay for supplemental short term disability benefits is a violation of the parties' collective bargaining agreement.

16. Local 791's members' failure to return overpayments of supplemental short term disability benefits to Shaw's is a violation of the parties' collective bargaining agreement.

17. Shaw's is being denied rights under the collective bargaining agreement by Local 791's failure to negotiate an arrangement to cover the amounts of the overpayment of benefits and underpayment of premiums.

18. This conduct has damaged Shaw's.

### Count II – Action for Recovery of Benefits Overpayment and Premium Underpayments
### 29 U.S.C. § 1132(a)(3)

19. Shaw's incorporates by reference the allegations in paragraph 1 through 18 above.

20. Shaw's is a fiduciary of the Supplemental Short Term Disability Plan.

21. Certain Methuen employees have received an overpayment of supplemental short term disability benefits.

22. Certain Methuen employees have underpaid premiums due to Shaw's for supplemental short term disability benefits.

23. Pursuant to 29 U.S.C. § 1132(a)(3), Shaw's is entitled to recover the overpayments of supplemental short term disability benefits and full payment of the premiums owed.

### Request for Relief

24.     Shaw's requests that the Union be required to agree to Shaw's deduction from the paychecks of employees who received supplemental short term disability benefits from December 1999 through December 31, 2003, the additional premium amounts owed to Shaw's from this time period, at an amount not to exceed $25 per week.  In the event that employees do not agree to the deductions, Shaw's requests that Local 791 not be permitted to contest the suspension of such employees until the amounts owed are repaid.

25.     Shaw's requests that the Union be required to agree to Shaw's deduction from the paychecks of employees who received supplemental short term disability benefits from December 1999 through December 31, 2003, of any overpayments made to such employees based on the difference arising from the retroactive change in the method of calculating benefits, at an amount not to exceed $25 per week.   In the event that employees do not agree to the deductions, Shaw's requests that Local 791 not be permitted to contest the suspension of such employees until the overpayment amounts are repaid.

SHAW'S SUPERMARKETS, INC.,

By its attorneys,

/s/Christa von der Luft
David E. Watson, BBO #517620
Christa von der Luft, BBO #600362
Nutter, McClennen & Fish, LLP
155 Seaport Boulevard
Boston, MA  02110-2604
(617) 439-2000

Dated:  January 16, 2004

1291108.1